FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
8/31/2020
CLERK'S OFFICE
AT GREENBELT
BY <u>KN</u>, DEPUTY CLERK

KOH/DJB: USAO 2019R00334

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. PWG-19-243** |
| | * | |
| **JOEL TEMBENG MUKONG,** | * | (Conspiracy to Commit Money |
|   a/k/a "Tebeng," | * | Laundering, 18 U.S.C. § 1956(h); |
|   a/k/a "Bling," | * | Forfeiture, 18 U.S.C. §§ 981(a)(1)(C) |
| | * | & 982(a)(1), 21 U.S.C. § 853(p), |
| **Defendant** | * | 28 U.S.C. § 2461(c)) |
| | * | |

\*\*\*\*\*\*\*

**SUPERSEDING INFORMATION**
**(as to defendant JOEL TEMBENG MUKONG only)**

**COUNT ONE**
**(Conspiracy to Commit Money Laundering)**

The United States Attorney for the District of Maryland charges that:

**Introduction**

At times relevant to this Superseding Information:

1. **JOEL TEMBENG MUKONG, a/k/a "Tebeng," a/k/a "Bling**," ("**MUKONG**") was a resident of Houston, Texas.

2. **Raphael Jason Nana Chinji** ("**Chinji**") was a resident of Houston, Texas.

3. **Aldrin Fon Fomukong** ("**Fomukong**") was a resident of Greenbelt, Maryland.

4. **Carlson Cho** ("**Cho**") was a resident of Framingham, Massachusetts and Braintree, Massachusetts.

5. **Yanick Eyong** ("**Eyong**") was a resident of Bowie, Maryland.

6. **Izuo-Ere Digifa** ("**Digifa'**") was a resident of Lynchburg, Virginia.

7.  Business 1 was a check cashing and money order business with locations in Houston and Dallas, Texas.

8.  40/40 Barber Link and QPZYTX LINK CO. were fictitious businesses registered by Individual 1 in Harris County, Texas on or about April 26, 2017 and May 24, 2017, respectively.

9.  SQT6 SOLUTION CO. was a fictitious business registered by Individual 2 in Harris County, Texas on or about June 7, 2017.

### *Business Email Compromise Schemes*

10. Business Email Compromise ("BEC") Schemes were complex schemes in which victims were deceived into sending money via wire transfers or other electronic funds transfers to bank accounts controlled by the perpetrators. The victims erroneously believed the transfer was being sent to a legitimate account when, in fact, it was being sent to bank accounts controlled by the perpetrators.

### *The Drop Accounts*

11. "Drop Accounts" were bank accounts opened or controlled by the defendant and his co-conspirators that were used to receive money from victims of BEC Schemes.

12. On or about May 1, 2017, Individual 3 opened TD Bank account x9646 ("TD Bank x9646") in the name of Skyline Investments.

13. On or about May 15, 2017, Individual 4 opened JP Morgan Chase Bank account x5222 ("JP Morgan x5222") in the name of Individual 4 dba AGridwell Global.

14. On or about May 23, 2017, **Digifa** opened SunTrust Bank account x4431 ("SunTrust x4431") in the name of Mercatel Investment LLC.

15.     On or about June 7, 2017, Individual 5 opened Bank of America account x7760 ("BOA x7760) in the name of Individual 5 Trading.

16.     On or about June 17, 2017, **Eyong** opened Bank of American account x0042 ("BOA x0042") in the name of CL Escrow LLC.

### *The Victims*

17.     Victim A was a resident of Georgia.

18.     Victim B was a resident of Washington.

19.     Victim C was a business located in Colorado.

20.     Victim D was a resident of California.

21.     Victim E was a business located in Massachusetts.

22.     Victims A, B, C, D, and E (together, the "Victims") were victims of BEC Schemes.

### **The Conspiracy**

23.     Between at least in or about April 2017 and in or about June 2017, in the District of Maryland and elsewhere, the defendant,

**JOEL TEMBENG MUKONG,**
a/k/a "Tebeng,"
a/k/a "Bling,"

did knowingly combine, conspire, and agree with each other, and others known and unknown to the United States Attorney, to conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity—to wit, wire fraud, in violation of 18 U.S.C. § 1343—while knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and:

    a.  with the intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

    b.  knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## Manner and Means

24. It was part of the conspiracy that co-conspirators opened and/or managed the Drop Accounts in order to receive millions of dollars from the proceeds of BEC Schemes, including the proceeds of the BEC Schemes conducted on the Victims.

25. It was further part of the conspiracy that the co-conspirators disbursed the money received from the Victims into the Drop Accounts by using wires to transfer money to other accounts, by initiating account transfers to other accounts at the same bank, by withdrawing sums of money, by obtaining cashier's checks, and by writing checks to other individuals or entities.

26. It was further part of the conspiracy that **MUKONG**, **Chinji**, and their co-conspirators recruited individuals to register, and assisted those individuals with registering, fictitious businesses in the United States, including Texas.

27. It was further part of the conspiracy that **MUKONG**, **Chinji**, and their co-conspirators negotiated the cashier's checks using the names of the fictitious businesses at check cashing locations in the United States, including Texas, all to promote wire fraud conspiracy and other criminal conduct, and to hide true ownership and disguise the nature, source, and control of those assets.

**Overt Acts**

28. In furtherance of the conspiracy, and to effect the objects thereof, **MUKONG**, **Chinji**, and others known and unknown to the United States Attorney, committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

*Skyline Investments*

a. On or about May 12, 2017, **Chinji** sent **Fomukong** the following message: "40/40 barber link."

b. On or about May 17, 2017, after receiving a $75,000 wire transfer from Victim A into TD Bank x9646, a co-conspirator obtained a cashier's check in the amount of $70,000 made payable to 40/40 Barber Link.

c. On or about May 17, 2017, **Fomukong** traveled from Baltimore, Maryland to Houston, Texas and met with **MUKONG** and **Chinji**.

d. On or about May 18, 2017, the $70,000 cashier's check made payable to 40/40 Barber Link was negotiated at Business 1 in Houston, Texas.

*AGridwell Global*

e. On or about May 24, 2017, after receiving a $250,870.65 wire transfer from Victim B into JP Morgan x5222, Individual 4 obtained a cashier's check in the amount of $65,500 made payable to QPZTYX LINK CO.

f. On or about May 24, 2017, **Fomukong** sent **MUKONG** a screenshot of a flight itinerary from Baltimore, Maryland to Houston, Texas.

g. On or about May 24, 2017, **Fomukong** traveled from Baltimore, Maryland to Houston, Texas.

h.  On or about May 25, 2017, the $65,500 cashier's check made payable to QPZTYX LINK CO. was negotiated at Business 1 in Houston, Texas.

*Mercatel Investment LLC*

i.  On or about June 9, 2017, after receiving a $50,703 wire transfer from Victim C into SunTrust x4431, **Digifa** obtained a cashier's check in the amount of $39,486 made payable to SQT6 SOLUTION CO.

j.  On or about June 12, 2017, the $39,486 cashier's check was deposited into Capital One Bank account x6452, controlled by Individual 2.

*Individual 5 Trading*

k.  On or about June 16, 2017, **Cho** and Individual 5 traveled from Boston, Massachusetts to Dallas, Texas and then from Dallas, Texas to Houston, Texas.

l.  On or about June 16, 2017, **Fomukong** provided **Cho**, while discussing **Cho**'s travel to Dallas and Houston, **Chinji**'s contact information.

m.  On or about June 16, 2017, **Fomukong** traveled from Washington, D.C. to Houston, Texas.

n.  On or about June 16, 2017, **MUKONG** sent **Fomukong** an image showing "SQT6 Solution Co."

o.  On or about June 16, 2017, after receiving a $227,000 wire transfer from Victim D into BOA x7760, **Cho** and Individual 5 obtained two cashier's checks, one in the amount of $90,000 and the other in the amount of $95,000, both made payable to SQT6 SOLUTION CO.

p.  On or about June 16, 2017, **Cho** sent **Fomukong** images of both the $90,000 and $95,000 cashier's checks.

6

  q. On or about June 16, 2017, **Fomukong** sent **MUKONG** the same images of both the $90,000 and $95,000 cashier's check, as well as **Cho**'s and Individual 5's flight information.

  r. On or about June 21, 2017 and June 22, 2017, respectively, both the $90,000 and $95,000 cashier's checks were negotiated at Business 1 in Houston, Texas.

*CL Escrow*

  s. On or about June 21, 2017, after receiving a $6 million wire transfer from Victim E into BOA x0041, **Eyong** made a $2,350,000 wire transfer to a bank account located in South Africa.

  t. On or about June 21, 2017, Fomukong sent **Chinji** and **MUKONG** an audio clip regarding a $6 million account balance, to which **Chinji** responded "QPZTYX LINK CO."

  u. On or about June 22, 2017, **Eyong** obtained three cashier's checks from BOA x0041, namely a $95,000 check made payable to Individual 6, a $95,000 check made payable to QPZTYX LINK CO., and a second $95,000 check made payable to QPZTYX LINK CO.

  v. On or about June 23, 2017, **Chinji** sent **MUKONG** and **Fomukong** the following message: "do all under the QPZTYX LINK CO."

  w. On or about June 23, 2017, **Eyong** obtained three additional cashier's checks from BOA x0041, namely three $95,000 checks, each made payable to QPZTYX LINK CO.

      x.  On or about June 26, 2017, each of the $95,000 cashier's checks dated June 23, 2017 was negotiated at Business 1 in Houston, Texas.


18 U.S.C. § 1956(h)

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under Count One of the Superseding Information.

## Money Laundering Forfeiture

2. As a result of a conviction for the offense charged in Count One, the defendant,

**JOEL TEMBENG MUKONG,**
a/k/a "Tebeng,"
a/k/a "Bling,"

shall forfeit to the United States, any property, real or personal, involved in such offense, and any property traceable to such property.

3. The property to be forfeited includes, but is not limited, the following:

    a. all property constituting the subject matter of the money laundering offense and any proceeds obtained therefrom;

    b. all property used to commit or facilitate the commission of the money laundering offense; and

    c. a sum of money equal to the value of any property involved in the offense.

## Substitute Assets

4. If, as a result of any act or omission of any defendant, any of the property described above as being subject to forfeiture,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: \_\_\_\_\_August 31, 2020\_\_\_\_\_         *Kelly O. Hayes*
                                              Robert K. Hur /
                                              Robert K. Hur
                                              United States Attorney